EXHIBIT A



# COMMONWEALTH OF MASSACHUSETTS
## Office of Consumer Affairs and Business Regulation
### DIVISION OF INSURANCE
1000 Washington Street • Suite 810 • Boston, MA  02118-6200
(617) 521-7794 • FAX (617) 521-7475
http://www.mass.gov/doi

CENTRAL MA

MAR 1 1 2020

CLAIMS DEPARTMENT

CHARLES D. BAKER
GOVERNOR

KARYN E. POLITO
LIEUTENANT GOVERNOR

MIKE KENNEALY
SECRETARY OF HOUSING AND
ECONOMIC DEVELOPMENT

EDWARD A. PALLESCHI
UNDERSECRETARY

GARY D. ANDERSON
COMMISSIONER OF INSURANCE

February 21, 2020

AMICA MUTUAL INSURANCE COMPANY
Attn: Scott Camirand
1 Research Drive, Suite 401B
Westborough, MA 01581-3958

   **Re: Service of Process**

Dear Mr. Camirand:

   Enclosed you will find legal process which was served upon the Commissioner of Insurance, in his capacity as attorney and registered agent for, Service of Process* for a foreign insurance company, as provided for in Massachusetts General Laws, Chapter 175, §151(3) and §154.

* **Please note: All future inquiry or correspondence should be directed to the attention of the attorney of record of the enclosed documents.**

Sincerely,

Stacy Siegan
Assistant to the General Counsel
(617) 521-7310

Enclosure(s)

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2081CV00292

Peter A. Gottlieb , PLAINTIFF(S),
Individually and on behalf of all Persons
v.   Similarly Situated

Amica Mutual Ins. Co. , DEFENDANT(S)



**SUMMONS**

THIS SUMMONS IS DIRECTED TO Amica Mutual Ins. Co . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the Middlesex Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
    the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
    opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
    to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
    extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
    copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
    a.  Filing your **signed original** response with the Clerk's Office for Civil Business, Middlesex Superior Court, 200 Trade Center,
        Woburn, MA. 01801 (address), by mail or in person, **AND**
    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
        address: John P. Zwez, 90 Canal St., Suite 130, Boston, MA. 02114

3.  **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer
    must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
    Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
    use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
    based on the same facts or transaction described in the Complaint, then you must include those claims
    in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
    lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
    Answer or in a written demand for a jury trial that you must send to the other side and file with the
    court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
    **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
    to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
    you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
    described in the rules of the Court in which the complaint was filed, available at
    www.mass.gov.courts/case-legal-res/rules of court.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    MIDDLESEX SUPERIOR COURT

| | |
|---|---|
| PETER A. GOTTLIEB,<br>Individually and on Behalf of all Persons<br>Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMICA MUTUAL<br>INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 2 o-292 |

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JAN 3 1 2020

CLERK

## CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Peter A. Gottlieb ("Plaintiff"), by and through his counsel, on behalf of himself and all other persons similarly situated (the "Class"), alleges the following facts and claims upon personal knowledge as to matters relating to himself, and upon information and belief as to all other matters based upon the investigation of counsel as follows:

### INTRODUCTION

1.     Plaintiff brings this action, for himself and on behalf of a class of similarly situated homeowners who are insurance policyholders of Amica Mutual Insurance Company ("Amica" or the "Company"), for the Company's excessive and unsupported premium increases giving rise to claims for breach of contract, breach of the implied covenants of good faith and fair dealing, unjust enrichment, money had and received, and unfair or deceptive acts under Chapter 93A.

2.     When Plaintiff made demand upon Amica in an effort to determine its reason for excessive increases in his homeowner's premiums, Amica refused to provide a substantive

1

response. Instead, the Company parroted back language from the policy which did not support the dramatic increase in premiums.

3.      If Amica had a contractually based justification for its premium increase, it seems only reasonable that it would have communicated this justification to Plaintiff.

4.      Due to Amica's refusal to deal honestly and transparently with Plaintiff, Mr. Gottlieb now brings this lawsuit.

## PARTIES

5.      Plaintiff Peter A. Gottlieb resides in Burlington, Massachusetts, and owned a homeowners insurance policy issued by Amica containing endorsement form HO 05 08 05 11 Specified Additional Amount of Insurance from March 10, 2015 to March 10, 2016 (the "Policy").

6.      Defendant Amica Mutual Insurance Company is a mutual property-casualty insurance company domiciled in Rhode Island with its headquarters located in Lincoln, Rhode Island. Amica is licensed to sell homeowners insurance policies in Massachusetts and other jurisdictions.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction because Plaintiff on behalf of himself and all others similarly situated states claims arising under Massachusetts law and seeks damages exceeding $25,000 (exclusive of interest and costs).

8.      Venue is proper because this matter involves legal issues relating to the interpretation and application of Massachusetts statutes, and Plaintiff and numerous putative class members reside in Middlesex County.

2

## SUBSTANTIVE ALLEGATIONS

### Amica Raises Homeowner's Premiums Far in Excess of Inflation Rates.

9.      The Policy included endorsement form HO 05 08 05 11 Specified Additional

Amount of Insurance (the "Endorsement").[1]  The Endorsement provided an additional 30% of

coverage on Mr. Gottlieb's property and states, in relevant part:

> **To the extent that coverage is Provided, we agree to provide an additional amount of insurance in accordance with the following provisions:**
>
> **A.  If you have:**
>
> **1.  Allowed us to adjust the Coverage A Limit Of Liability and the premium in accordance with:**
> **a.  The property evaluations we make; and**
> **b.  Any increases in inflation; and**
>
> **2.  Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;**

**the provisions of this endorsement will apply after a loss, provided you elect to**

**repair or replace the damaged building.**

10.     "Inflation" is not a defined term in Mr. Gottlieb's policy with Amica. The

Merriam-Webster dictionary defines inflation as:

> 1: an act of inflating: a state of being inflated: such as
> a: DISTENSION
> b: a hypothetical extremely brief period of very rapid expansion of the universe immediately following the big bang
> c: empty pretentiousness: POMPOSITY
> **2: a continuing rise in the general price level usually attributed to an increase in the volume of money and credit relative to available goods and services**

*See* https://www.merriam-webster.com/dictionary/inflation (emphasis added).

11.     On March 13, 2015, Amica sent Mr. Gottlieb an amended declaration statement

---

[1] HO 05 08 05 11 is a form used throughout the property casualty industry.

for his Policy No. 6603201338 (in effect from March 10, 2015 to March 10, 2016) showing that the Coverage A (Dwelling) on his insured property was $311,000 for the policy year.

12.     On February 11, 2016, Amica sent Mr. Gottlieb a renewal term sheet for his homeowner's insurance policy increasing the Limit of Liability for Coverage A (Dwelling) to $321,000 as of the date of his renewal (March 10, 2016).

13.     The $10,000 increase in the Coverage A Dwelling limit on Mr. Gottlieb's house represented a Dwelling limit increase of 3.2%, which was well in excess of the prior year's rate of inflation. Mr. Gottlieb ultimately canceled his Amica policy and obtained a homeowner's policy from another insurer.

14.     In a M.G.L. c. 93A letter dated May 30, 2019, Mr. Gottlieb asked Amica to identify the basis for the $10,000 increase in his Coverage A Dwelling Limit in March 2016. On June 28, 2019 Amica responded to Mr. Gottlieb's demand letter by declining to identify the source of the data it used to determine the $10,000 increase in March 2016.

15.     The Consumer Price Index ("CPI") is a measure of the average change over time in the prices paid by urban consumers for goods and services. *See* bls.gov/cpi/questions-and-answers.htm (United States Department of Labor Bureau of Labor Statistics Consumer Price Index Frequently Asked Questions). The Merriam-Webster dictionary similarly defines the consumer price index as "an index measuring the change in the cost of typical wage-earner purchases of goods and services expressed as a percentage of the cost of these same goods and services in some base period." *See* https://merriam-webster.com/dictionary/consumer%20price$20index. Merriam-Webster notes the CPI may also be referred to as a "cost-of-living index." *Id.*

16.     The CPI rose by 0.7% in 2015.[2] Thus, Amica's increase in Mr. Gottlieb's Coverage A Limit was over **four times** the amount of the inflation rate of the Consumer Price Index. Since inflation is defined as "a continuing rise in the general price level usually attributed to an increase in the volume of money and credit relative to available goods and services," *see* Merriam-Webster, *supra*, the CPI reflects national rates of inflation.  By using an adjustment factor that far exceeds the rate of inflation, the Company has overcharged Mr. Gottlieb and the putative Class members in an unfair and/or deceptive manner.

17.     The Insurance Services Office ("ISO"), is a subsidiary of Verisk Analytics that collects and sells data about property-casualty insurance risks to insurers. ISO markets a product called 360Value for Personal Property and which it describes as providing "[r]eliable replacement cost estimates." *See* https://verisk.com/insurance/products/360value-personal/. The ISO states "[r]eplacement costs fluctuate for properties you insure when homeowners make improvements and building material prices rise and fall." *Id.*

18.     The ISO offers periodic reports of increases and decreases in replacement cost estimates to insurers that rely upon this data in order to determine replacement costs. *See*, *e.g.*, https://www.verisk.com/siteassets/media/underwriting-v/resources/360value-quarterly/360value-q2-2016_usa.pdf. The 2016 Second Quarter 360Value report provides that "From April 2015 to April 2016, overall reconstruction costs increased 1.6% in the United States." *Id.*

19.     ISO also offers state specific data. During the same timeframe, the ISO noted that in Massachusetts increases in reconstruction costs ranged from a low of 1.5% in certain territories to a high of 1.99%. *Id.* The upper end of the 360Value reconstruction cost increase for Massachusetts from the Spring of 2015 to the Spring of 2016 (1.99%) is significantly lower than

---

[2] *See*, *e.g.*, https://kiplinger.com/web_docs/cpi/cpichart.pdf.

the 3.20% imposed by Amica on Mr. Gottlieb in March 2016.[3] Thus, the rate of inflation applied

by Amica was well in excess of the CPI and the 360Value reconstruction costs.

    20.    Numerous indices track construction cost inflation on the national level:

| Index | 7/2015 – 7/2016 Inflation Increase |
|---|---|
| ENR – Building Cost Index[4] | +2.7% |
| FM Global – US Industrial Buildings Average[5] | +1.3% |
| RSMeans – 30-City Average[6] | +0.5% |
| Marshall & Swift, US Average[7] | -.03% to +0.5% |

*See* https://www.duffandphelps.com/-/media/assets/pdfs/publications/fixed-asset-management-

and-insurance-solutions/cost-trend-update-july-2017.ashx.

    21.    These construction cost indices reflect a much lower rate of building cost inflation

than applied by Amica to Mr. Gottlieb's policy being, on average, much closer to the CPI rate of

---

[3] The Insurance Services Office has competitors that provide similar services.

[4] Engineering News-Record, Monthly Construction Economics Report. Engineering New-Record ("ENR") publishes both a Construction Cost Index and Building Cost index that are widely used in the construction industry. *See* https://www.enr.com/economics.

[5] FM Global is a mutual insurance company based in Rhode Island, that specializes in loss prevention services and publishes reconstruction cost statistics. *See* https://www.fmglobal.com/research-and-resources/research-and-testing.

[6] RSMeans, Construction Cost Indices, 30-City Average. RSMeans data is assembled by a Gordian, a leading provider of facility and construction cost data. *See* https://www.rsmeans.com/info/contact/about-us.aspx.

[7] Marshall & Swift/Boeckh, Marshall Valuation Service, Quarterly Cost Index provided by CoreLogic. CoreLogic provides information intelligence to identify and manage growth opportunities, improve business performance and manage risk as a market leader for unique property-level insights. https://www.corelogic.com/about-us/our-company.aspx.

0.7% inflation (and the *maximum* Massachusetts ISO rate of 1.99%) than Amica's inflation increase of 3.2% in March 2016.

     22.    Per the terms of the Endorsement, the increase in Coverage A (Dwelling) limit (and corresponding premium) for Mr. Gottlieb's homeowner's insurance could only be due to either: (1) property evaluations made by Amica; or (2) increases in inflation. *See* Para. 6. The policy does not define the terms "increases in inflation" or "property evaluations."

     23.    In its Chapter 93A response letter of June 28, 2019, Amica claims at its page 3 that "the adjustment of [Mr. Gottlieb's] Coverage A limit of liability was not based upon the inflation rate reflected in the Consumer Price Index, but rather was based on a property evaluation of replacement values." However, the letter accompanying the policy issued to Mr. Gottlieb in 2016 provides the increase in his Coverage A limit of liability was not due to a new property evaluation, but the result of "many factors." March 10, 2016 Cover Letter ("Cover Letter") at 1. The only factor explicitly identified by the Cover Letter was reconstruction costs which required a higher dwelling limit because "[r]econstruction costs have risen steadily since our last survey of your home." *Id.* Only a year had passed since Amica surveyed Mr. Gottlieb's property.

     24.    Amica's explanation in its 93A Response Letter that the increase was based on "property evaluation of replacement values" is misleading because increases in construction costs due to "a continuing rise in the general price level" is an inflation adjustment per the common definition of the term "inflation" rather than a "property evaluation." Thus, the 93A Response Letter is, in and of itself, a separate act lacking in good faith.

     25.    Amica did not seek permission from Mr. Gottlieb to enter or re-inspect the insured property after March 2015 or provide him with a new property evaluation. Mr. Gottlieb made no material improvements, alterations or additions to the insured dwelling that would have

7

increased the rebuilding cost of the structure and merited an increase in the Coverage A Limit of Liability and the corresponding insurance premium.

26.     Upon information and belief, Amica uses an undisclosed computer program designed to increase Dwelling Limits and premiums automatically upon each renewal without performing a new property evaluation and regardless of whether the contractual criteria for raising Limits and/or premiums were met.

27.     Because Amica artificially increases the rebuilding costs of properties owned by Class members each year to justify a higher Coverage A Dwelling limit, the rebuilding cost overcharge continues to increase. Upon each renewal, the amount of the overcharge increases.

28.     By increasing the rebuilding costs at a rate far in excess of actual building cost construction rates (thereby increasing premiums) without conducting actual property evaluations, Amica has over inflated rebuilding costs and increased policy limits to the detriment of Class members in an unfair and deceptive manner.

## Mr. Gottlieb did not Purchase an "Inflation Guard" Endorsement That Contained a Negotiated Inflation Rate for Future Increases

29.     Mr. Gottlieb and the other members of the putative Class did not purchase a separate "Inflation Guard" endorsement from Amica in which the parties negotiate future inflation increases in advance and which are not linked to the actual inflation.

30.     An "Inflation Guard" endorsement is made on Form HO 04 046 10 00, which is separate and distinct from the HO 05 08 05 11 "Specified Additional Amount of Insurance" endorsement form.[8] Under an "Inflation Guard" endorsement, the policyholder and insurer agree

---

[8] *Compare* https://qol.qmfi.com/quincyonline/PDF_Forms/QM05080511.pdf *with* https://www.faia.com/getmedia/52216b40-7347-4623-93a8-76f45be064ab/HO0446.pdf.aspx?ext=.pdf.

to increase the Limit of Liability under the policy each year by a specific rate. This negotiated rate is identified in the endorsement and agreed to in advance by both the policyholder and insurer for future years. Therefore, unlike in the Endorsement, "Inflation Guard" increases are not based on actual inflation rates.

31.       Upon information and belief, Amica has overcharged Mr. Gottlieb and the Class by calculating premiums based on rates in excess of the actual rate of inflation as if the Class members had "Inflation Guard" endorsements, and did so without disclosing this information and/or practice to the Class. Thus, irrespective of whether the policyholders purchased the "Inflation Guard" endorsement (HO 04 046 10 00) they were effectively treated as if they had.

## The Discovery Rule/Fraudulent Concealment

32.       Plaintiff Peter A. Gottlieb was unable to discover earlier that Amica was improperly increasing his Coverage A Dwelling Limit in excess of the rate of inflation and overcharging him on his homeowners insurance policy because: (1) Amica did not disclose the annual rate of increase; (2) Amica improperly attributed Coverage A Dwelling Limit increases to "Inflation Guard" endorsements Mr. Gottlieb and the putative class members had not purchased; and (3) Amica refused to disclose the actual basis for its calculation of the Coverage A Dwelling Limit increases.

33.       Plaintiff Gottlieb only recently learned that Amica was violating his contract by increasing his Coverage A Dwelling Limits (and therefore premiums) in excess of the rate of inflation adjustment permitted by the Endorsement shortly before the filing of this complaint.

## CLASS ACTION ALLEGATIONS

34.       Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b) of the Massachusetts Rules of Civil Procedure seeking to represent a class of all persons who own

9

or have owned Amica homeowners policies containing the Endorsement from February 2010 to the present (the "Class"). Excluded from the Class are Amica's directors and senior management, and any entity related to or affiliated with Amica and the legal representatives, heirs, successors-in-interests or assigns of any such excluded entity, and this Court and its personnel.

35.     The members of the Class are so numerous that joinder of all members is impracticable. Amica has issued homeowners policies with the Endorsement to Plaintiff Peter A. Gottlieb and, upon information and belief, tens of thousands of other putative Class members. Class members can be identified from the records maintained by Amica and notified of the pendency of this action by mail using a form of notice similar to that customarily used in other class actions.

36.     Plaintiff will fairly and adequately represent and protect the interests of all members of the Class. Plaintiff has retained competent counsel experienced in policyholder class action litigation in both state and federal courts nationwide and intends to prosecute this action vigorously.

37.     Plaintiff's claims are typical of those of the other members of the Class because (a) each has a homeowners insurance policy with the same Endorsement language supporting his/her claim, and (b) the harm sustained by Plaintiff and all of the members of the Class arises from and was caused by the same course of conduct in which Amica engaged. The Plaintiff does not have interests that are antagonistic to or in conflict with the Class.

38.     Common questions of law and fact exist as to all members of the Class and predominate over questions solely affecting individual members of the Class. Common questions include:

(a)     What is the correct method for determining inflation under the Endorsement;

10

(b)     Whether and by how much Amica's increases in Coverage A Dwelling Limits exceeded the contractually permitted rate of inflation;

(c)     Whether Amica overcharged members of the Class and retained such overcharges;

(d)     Whether Amica has violated M.G.L. c. 93A;

(e)     Whether the Class has sustained damages and the proper measure of such damages; and

(f)     Whether equitable relief is appropriate to prevent the continuation of the alleged wrongdoing.

39.     In raising Coverage A Dwelling Limits in excess of the rate of inflation permitted by the Endorsement, Amica has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

40.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the harm suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the wrongful conduct alleged. Moreover, absent class treatment, there is a high risk of inconsistent judgments by different courts hearing the identical claims of tens of thousands of policyholders. Plaintiff knows of no difficulty that will be encountered in the management of this litigation to preclude its maintenance as a class action.

## COUNT I –
## BREACH OF CONTRACT

41.     Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

11

42.     Plaintiff Peter A. Gottlieb's Endorsement states that Amica may increase the Coverage A Limit of Liability and premium in accordance with "property evaluations" and "any increases in inflation."

43.     Consistent with policy form HO 05 08 05 11, each Class member's policy contains identical language restricting Amica's right to increase the Coverage A Limit of Liability to the identified factors.

44.     Plaintiff and the Class have fully performed their part of their insurance contracts.

45.     Amica has breached its contracts by failing to comply with the Endorsement and raising the Coverage A Limit of Liability above "increases in inflation."

46.     The Company's breaches of contract have damaged Plaintiff and the Class in an amount to be proven at trial.

**COUNT II –**
**BREACH OF THE IMPLIED COVENANTS OF**
**GOOD FAITH AND FAIR DEALING**

47.     Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

48.     Plaintiff entered into a contract with Amica which permitted the Company to increase the Coverage A Limits of Liability, but restricted such increases to property re-evaluations and increases in inflation.

49.     Plaintiff and the Class have fully performed their part of their insurance contracts.

50.     Amica had an implied duty not to increase the Coverage A Limits of Liability in excess of the restrictions identified in the Endorsement.

51.     Amica breached the implied covenants of good faith and fair dealing by, *inter alia*, overcharging premiums and retaining excess funds due to Plaintiff and the Class.

52.     The Company's breaches of the implied covenants of good faith and fair dealing have damaged Plaintiff and the Class in an amount to be proven at trial.

## COUNT III –
## UNJUST ENRICHMENT

53.     Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

54.     Because the Company will be unjustly enriched if it is allowed to retain such overcharges, all excess premiums generated by increases in excess of those permitted by the Endorsement should be disgorged to Plaintiff and the Class.

55.     This relief is appropriate to the extent Plaintiff and the Class may have no adequate remedy at law.

## COUNT IV –
## MONEY HAD AND RECEIVED

56.     Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

57.     Amica owes Plaintiff and the Class for money had and received from policyholders when they (over) paid their policy premiums.

## COUNT V –
## VIOLATION OF CHAPTER 93A

58.     Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

59.     Amica has engaged in the conduct of trade or commerce in Massachusetts within the meaning of Chapter 93A, §2.

60.     Amica has willfully or knowingly committed unfair or deceptive acts or practices in violation of M.G.L. c. 93A, §9 and M.G.L. c. 176D(3) by, *inter alia*: (1) increasing homeowner's insurance premiums and the "Limit of Liability" under Coverage "A. Dwelling" at a rate far in excess of the actual rates of inflation on policyholders who purchased endorsement HO 05 08  05 11 Specified Additional Amount of Insurance (the "Endorsement"); and/or (2) applying undisclosed "Inflation Guard"-like premium increases; knowingly inflating the rebuilding costs of insured properties without any bona fide supporting analysis; and (3)

13

informing policyholders that it's excessive premium increases were due to "property evaluation of replacement values" rather than "a continuing rise in the general price level" or inflation.

61.     Amica's violations of Chapter 93A and M.G.L. c. 176D(3) have proximately harmed the Class in an amount at least equal to the excess premiums charged and interest thereon.

62.     The Company's violations of Chapter 93A and M.G.L. c. 176D(3) have been willful and knowing.

63.     Plaintiff sent a Chapter 93A demand letter to Amica on May 30, 2019, seeking relief for the conduct alleged therein. The Company declined to make any offer to settle the claims asserted.

64.     Plaintiff and the Class are entitled to up to three but not less than two times actual damages, their reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the Court to:

A.     Certify this case as a class action;

B.     Grant judgment against Amica on all Counts and for premiums in excess of the amount permitted under the Endorsement, including statutory interest thereon, and for multiple damages, attorneys' fees and costs under M.G.L. c. 93A;

C.     Grant all appropriate equitable and/or injunctive relief against Amica to the extent the Court determines that an adequate remedy at law does not exist;

D.     Award Plaintiff his costs and disbursements incurred in maintaining this action, including reasonable attorneys' and experts' fees and other expenses, and pre-and post-judgment interest; and

E.     Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Dated: January 30, 2020

Respectfully submitted,

By Plaintiff,

By their attorneys,

**ADKINS, KELSTON & ZAVEZ, P.C.**

John Peter Zavez

John Peter Zavez, BBO #555721
Noah Rosmarin, BBO #630632
Brendan M. Bridgeland, BBO#648312
90 Canal Street, 1st Floor
Boston, MA  02114
Phone (617) 367-1040
Fax (617) 742-8280

*Counsel for plaintiff and the proposed class*