UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
                                   )
**PETER A. GOTTLIEB,**             )
**individually and on behalf of all others** )
**similarly situated,**            )
                                   )
               **Plaintiff,**           )
                                   )
               **v.**                    )    Civil Action No. 20-cv-10509-DJC
                                   )
                                   )
**AMICA MUTUAL INSURANCE**         )
**COMPANY,**                       )
                                   )
               **Defendant.**            )
_____)

## **MEMORANDUM AND ORDER**

**Casper, J.**                                                                            **December 21, 2020**

### **I.**    **Introduction**

Plaintiff Peter Gottlieb ("Gottlieb"), individually and on behalf of a class of similarly situated homeowner insurance policyholders, has sued Defendant Amica Mutual Insurance Company ("Amica") for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), unjust enrichment (Count III), "money had and received" (Count IV) and unfair or deceptive acts under Mass. Gen. L. c. 93A (Count V), arising from Amica's alleged excessive premium increases.  D. 1-1.  Amica now moves to dismiss Gottlieb's complaint in the entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  D. 11.  For the reasons discussed below, Amica's motion to dismiss is ALLOWED IN PART and DENIED IN PART.

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. If they do not, then dismissal is warranted. See Ocasio-Hernandez, 640 F.3d 1, 12 (1st Cir. 2011).

**III.    Factual Background**

Unless otherwise noted, the following facts are drawn from Gottlieb's complaint, D. 1-1, and documents referenced therein, and are taken as true for the purposes of resolving the motion to dismiss. Gottlieb purchased a homeowner's insurance policy for his residence in Burlington, Massachusetts ("the Property") from Amica, the term of which was March 10, 2015 through March 10, 2016 (the "2015-2016 Policy"). D. 1-1 ¶ 5. The 2015-2016 Policy included an endorsement regarding the Specified Additional Amount of Insurance (the "Endorsement"). D. 1-1 ¶ 9. The Endorsement provided an additional thirty percent of coverage on Gottlieb's property and states in relevant part that:

> To the extent that coverage is [p]rovided, we agree to provide an additional amount of insurance in accordance with the following provisions:
>
> **A.**     If you have:

      1.      Allowed us to adjust the Coverage A Limit Of Liability and the premium in accordance with:

           a.   The property evaluations we make; and
           b.   Any increases in inflation; and

      2.      Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;

the provisions of this endorsement will apply after a loss, provided you elect to repair or replace damaged building.

D. 1-1 ¶ 9. On March 13, 2015, Amica sent Gottlieb an amended declaration statement showing that the coverage A (dwelling) on his insured property was $311,000 for the 2015-2016 Policy. D. 1-1 ¶ 11.

On February 11, 2016, Amica sent Gottlieb a renewal term sheet for the 2016-2017 policy year. D. 1-1 ¶ 12. Gottlieb alleges that Amica did not seek to re-inspect the Property after March 2015 and Gottlieb did not make any material improvements, alterations or additions to the insured dwelling. D. 1-1 ¶ 25. The limit of liability for Coverage A (dwelling) under the policy for the 2016-2017 term (the "2016-2017 Policy") was $321,000. D. 1-1 ¶ 12. This was a $10,000 increase in the coverage A dwelling limit and represented a dwelling limit increase of 3.2%. D. 1-1 ¶ 13. Gottlieb alleges that Amica uses an "undisclosed computer program designed to increase [d]welling [l]imits and premiums automatically upon renewal without performing a new property evaluation." D. 1-1 ¶ 26. Gottlieb, accepted the 2016-2017 Policy, see D. 12-2 (Gottlieb's 2016-2017 Policy), but ultimately canceled the 2016-2017 Policy and obtained a homeowner's policy from another insurer. D. 1-1 ¶ 13.

On May 30, 2019, Gottlieb sent Amica a Chapter 93A demand letter asking Amica to identify the reason for the $10,000 increase in his coverage A dwelling limit in the 2016-2017 Policy. D. 1-1 ¶ 14. On June 28, 2019, Amica responded to Gottlieb's demand letter ("Chapter

3

93A Response Letter") and stated that "many factors went into estimating [Gottlieb's] dwelling limit.  One of these factors is reconstruction costs.  Reconstruction costs have risen steadily since [Amica's] last survey of [Gottlieb's] home."  D. 12-3 at 2 (quoting 2016-17 Policy).  The Chapter 93A Response Letter further states that the adjustment of Coverage A Limit of liability "was based on a property evaluation of replacement values after covered insurance losses in Mr. Gottlieb's zip code."  D. 12-3 at 3.

**IV.     Procedural History**

Gottlieb initiated this class action in Middlesex Superior Court, D. 1-1, but Amica removed the case to this Court.  D. 1.  Amica moves to dismiss Gottlieb's claims for failure to state a claim.  D. 11.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 21.

**V.     Discussion**

**A.     Breach of Contract (Count I)**

Gottlieb alleges that Amica breached the terms of the 2015-2016 Policy when it offered him the 2016-2017 Policy with a $10,000 dwelling limit increase because the 2015-2016 Policy allowed Amica to increase coverage only in accordance with property evaluations and increases in inflation.  D. 1-1 (Count I).  "A renewal of insurance is in essence a new contract wherein the rights of the parties are to be determined by a consideration of the terms and conditions of the original policy . . . unless a new policy be [d]elivered to the insured . . . in connection with the contract of renewal, in which case the insured is presumed to have assented to the terms of the new policy if it is retained without reading or read without complaint and rejection . . . ."  Epstein v. Northwestern Nat. Ins. Co., 267 Mass. 571, 574 (1929).  Here, as alleged, Amica delivered a new policy to Gottlieb noting the changes in the policy coverage.  D. 1-1 ¶ 12; see D. 12-2.  Even as alleged, Gottlieb accepted the new policy even if he later cancelled it.  D. 12-2.  The 2016-2017

4

Policy, therefore, constituted a new and separate contract. Thus, the Endorsement in the 2015-2016 Policy does not govern Amica's ability to increase coverage limitation in the 2016-2017 Policy and does not constitute a basis for a breach of contract claim.

Gottlieb also alleges that Amica breached the 2016-2017 Policy because that Policy also contained an Endorsement that was identical to the language in the 2015-2016 Endorsement, precluding Amica from "including anticipated future inflation increases at the beginning of the policy term rather than increasing the limit each month." D. 16 at 10. As noted above, however, Gottlieb assented to the terms of the 2016-2017 Policy, including the Endorsement contained within and, even as alleged in the complaint, Amica did not breach the terms of this contract.

To the extent that Gottlieb relies upon the analysis in Trocki v. Penn National Mutual Casualty Insurance Co. Inc., No. 19-cv-13638-NLH-KMW, 2020 WL 3468217 (D. N.J. Jun. 24, 2020) to save his claim for breach of contract, such reliance is misplaced. D. 22.[1] In Trocki, unlike here, the plaintiff alleged that defendant insurance company committed common law fraud and violated the New Jersey Consumer Fraud Act when it applied an extracontractual, undisclosed premium formula to increase plaintiff's premiums and defraud him. Id. at *1. The Court noted that had plaintiff brought a breach of contract claim for these hidden or undisclosed fees it "could be problematic" where "no express or implied term of the contract was breached." Id. at *2. Here, unlike plaintiff in Trocki, Gottlieb did bring a breach of contract claim and as noted above he accepted the terms in the 2016-2017 Policy. Accordingly, the Court ALLOWS Amica's motion to dismiss Gottlieb's breach of contract claim (Count I).

---

[1] The Court allows Gottlieb's motion for leave to file supplemental authority, D. 22, *nunc pro tunc*.

### B.      Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)

Under Massachusetts law, "'[e]very contract implies good faith and fair dealing between the parties to it.'" T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569-70 (2010) (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451 (1991)). "The covenant of good faith and fair dealing requires that 'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.'" Id. at 570 (citation omitted). To prevail, Gottlieb must present "evidence of bad faith or an absence of good faith." Id. at 574.

Gottlieb alleges that Amica "had an implied duty not to increase the Coverage A Limits of Liability in excess of the restrictions identified in the Endorsement." D. 1-1 ¶ 50. Gottlieb, moreover, alleges that Amica "breached the implied covenants of good faith and fair dealing by overcharging premiums and retaining excess funds due to him and others in the class." Id. ¶ 51. Even accepting that as true, the "scope of the covenant is only as broad as the contract that governs the particular relationship," Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 386 (2005), and its purpose is to protect the "fruits of the contract" for the contracting parties. Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385 (1976); see Composite Co., Inc. v. American Intern. Group, Inc., 988 F. Supp. 2d 61, 80 (D. Mass. 2013) (ruling that defendants' failure which may have caused plaintiff to pay higher premiums under late insurance contacts did not unduly impair the fulfilment of the contract at issue). Gottlieb's allegations, even presuming them to be true as the Court must at this juncture, do not explain how Amica's alleged conduct deprived him of the "fruits" of the 2016-17 Policy, particularly where this contract, including the Endorsement, does not guarantee him another coverage limit or require a particular calculation procedure. Accordingly, the Court allows the motion to dismiss the claim for breach of the covenant of good faith and fair dealing (Count II).

### C.      Unjust Enrichment (Count III) and Money Had and Received (Count IV)

"Unjust enrichment is an equitable claim with the same elements [as money had and received] save that it is not limited to enrichment by money, or its equivalent." Jelmoli Holding, Inc. v. Raymond James Financial Services, 470 F.3d 14, 16 n.2 (1st Cir. 2006). To establish either claim, Gottlieb must show that:  (1) a benefit was conferred upon Amica; (2) Amica had an appreciation or  knowledge of the benefit; and (3) that acceptance or retention by Amica of this benefit would be inequitable without payment for its value.  See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009).  Amica does not appear to dispute the first two elements, but instead disputes that the third element has been plausibly alleged by arguing that there was "nothing unjust or unfair about the knowing bargain entered into by the parties."  D. 19 at 10.  As alleged by Gottlieb, however, Amica artificially inflated increases in premiums to overcharge him and seeks recovery and/or disgorgement of these overpayments.  D. 1-1 ¶ 54; D. 16 at 17.  Gottlieb contends that it would be inequitable for Amica to retain the alleged overcharge in premiums where the calculation of same is undisclosed and exceeds reasonably expected rates. D. 1-1 ¶ 19; D. 16 at 18.  Accepting these allegations as true, Gottlieb has plausibly pled that the circumstances under which Amica received the benefit of an increase in premiums were inequitable.  Accordingly, the Court denies the motion to dismiss as to the unjust enrichment and money had and received claims.  See Hoving v. Transnation Title Ins. Co., 545 F. Supp. 2d 662, 699 (E.D. Mich. 2008) (ruling that a "borrower who is made aware of the theoretical possibility of a lower title policy premium but is charged a higher amount in her own transaction may still be the victim of an inequity" as "[i]t would be a rare customer indeed who actually was aware of an entitlement to a lower premium but elected to pay a higher one"); see also Mims v. Stewart Title Guar. Co., 521 F. Supp. 2d 568, 574 (N.D. Tex. 2007) (holding that plaintiff's

allegation that defendant failed to apply a mandatory discount for the reissue policy stated a claim for unjust enrichment).

### D. Chapter 93A Claim (Count V)

Amica moves to dismiss Gottlieb's Chapter 93A claim in its entirety, including but not limited to the extent to which he relies upon its Chapter 93A Response Letter. Gottlieb alleged in his complaint that Amica's "explanation in its [Chapter] 93A Response Letter that the increase was based on property evaluation of replacement values is misleading because increases in construction costs due to a continuing rise in the general price level is an inflation adjustment per the common definition of the term inflation rather than a property evaluation" and, "[t]hus, the [Chapter] 93A Response Letter is, in and of itself, a separate act lacking in good faith." D. 1-1 ¶ 24 (internal quotation marks omitted).

Amica argues that Gottlieb's allegation that the Chapter 93A Response Letter is in it of itself a separate act lacking in good faith "is specious and does not support any claim for violation of Chapter 93A" and thus "to the extent that Gottlieb alleges that Amica's June 28, 2019 response to G.L. c. 93A letter correspondence violated Chapter 93A, any such claim should be dismissed." D. 12 at 16-17. Gottlieb, however, has now clarified that his Chapter 93A claim is not premised on what Amica stated in its Chapter 93A Response Letter. See D. 16 at 12. Instead, Gottlieb alleges that Amica "knowingly committed unfair or deceptive acts or practices" in violation of Chapter 93A by "*inter alia*: (1) increasing homeowner's insurance premiums and the 'Limit of Liability" under Coverage 'A. Dwelling' at a rate far in excess of the actual rates of inflation on policyholders who purchased endorsement . . . and/or (2) applying undisclosed 'Inflation Guard' – like premium increases; knowingly inflating the rebuilding costs of insured properties without any bona fide supporting analysis; and (3) informing policyholders that it's excessive premium increases were due to 'property evaluation of replacement values' rather than 'a continuing rise in

8

the general price level' or inflation." D. 1-1 ¶ 60. To the extent that Gottlieb's Chapter 93A claim in his complaint is premised on the Chapter 93A Response Letter, he has now expressly waived that argument. Moreover, to the extent that Gottlieb was relying upon his breach of contract claim and/or breach of implied covenant of good faith and fair dealing, which the Court has concluded have not been plausibly alleged, for his Chapter 93A claim, this portion of his Chapter 93A claim also fails. It is unclear that Gottlieb is alleging any unfair or deceptive practices other than the conduct that gives rise to his other claims. D. 1-1 ¶¶ 58-64. Accordingly, the Court allows the Chapter 93A claim to proceed only to the extent that Gottlieb relies upon the conduct underling his unjust enrichment and money had and received claims, Counts III and IV, which also survive, which at least plausibly alleges a Chapter 93A claim. See Composite Co., Inc., 988 F. Supp. 2d at 79-80 (allowing motion to dismiss as to contract claims but denying same as to Chapter 93A claim).

**VI.    Conclusion**

For the foregoing reasons, the Court ALLOWS Amica's motion to dismiss as to Count I (breach of contract) and Count II (breach of the implied covenant of good faith and fair dealing) and DENIES it as to Count III (unjust enrichment) and Count IV (money had and received) and DENIES it IN PART as to Count V (Chapter 93A) to extent it relies upon conduct giving rise to Count III and Count IV, but otherwise ALLOWS the motion to dismiss as to Count V.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge