UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER A. GOTTLIEB,<br>individually and on behalf of all others<br>similarly situated,<br><br>      Plaintiff,<br><br>    v.<br><br>AMICA MUTUAL INSURANCE<br>COMPANY,<br><br>      Defendant. | Case No. 20-cv-10509-DJC |

**MEMORANDUM AND ORDER**

**Casper, J.**                                   **January 11, 2022**

**I. Introduction**

Plaintiff Peter Gottlieb ("Gottlieb"), individually and on behalf of a class of similarly situated homeowners insurance policyholders, sued Defendant Amica Mutual Insurance Company ("Amica") for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), unjust enrichment (Count III), money had and received (Count IV) and violation of Mass. Gen. L. c. 93A ("Chapter 93A") (Count V), arising from premium increases in Gottlieb's homeowners policy. D. 1-1. After the Court dismissed Counts I, II and part of Count V of Gottlieb's complaint, D. 24, Gottlieb amended, D. 47, and the parties have now cross-moved

for summary judgment on the remaining counts. D. 68; D. 72. For the reasons discussed below, the Court DENIES Gottlieb's motion and ALLOWS Amica's motion.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are undisputed unless otherwise noted and are drawn from the parties' submissions of material facts, D. 70; D. 74, and Gottlieb's response to same, D. 78.[1]

Gottlieb purchased a homeowners insurance policy issued by Amica that covered him from March 10, 2015 to March 10, 2016 ("2015-16 Policy") and insured his dwelling for $311,000. D. 70 ¶¶ 3-4; D. 74 ¶¶ 1-5; D. 78 ¶¶ 1-5. Amica charged Gottlieb a $730 premium for the 2015-16

---

[1] It does not appear that Amica filed a response to Gottlieb's statement of material facts ("SOF"), D. 70, thus the Court deems those statements admitted to the extent they are material, not conclusory and do not rely upon inadmissible evidence. See Plourde v. Sorin Grp. USA, Inc., 517 F. Supp. 3d 76, 81 (D. Mass. 2021).

Policy.  D. 70 ¶ 5.  Gottlieb was responsible for determining the proper amount of coverage he sought from Amica, which he could base on estimates that Amica provided to help with his valuation decision.  D. 74 ¶¶ 3-4; D. 78 ¶¶ 3-4.

In February 2016, Amica sent Gottlieb a renewal term sheet that increased the liability limit for his dwelling ("Liability Limit") to $321,000 for the next coverage year, beginning March 10, 2016 ("2016-17 Policy"), which Gottlieb renewed at that limit.  D. 70 ¶¶ 6-7; D. 74 ¶ 17; D. 78 ¶ 17.  Amica charged Gottlieb a $795 premium for the 2016-17 Policy.  D. 70 ¶ 8.  The 2016-17 Policy Liability Limit increased by $10,000 or 3.1% over the prior year, and the total premium increased by $65, $16 of which is due to the Liability Limit increase.  Id. ¶¶ 9-10; D. 74 ¶¶ 20-21; D. 78 ¶¶ 20-21.

In the cover letter accompanying the 2016-17 Policy, Amica stated that it was "increasing your dwelling coverage to $321,000 in line with our estimate," but that Gottlieb "may contact [Amica] to discuss this further or to request changes to the dwelling coverage limit at any time during the policy period," and that "ultimately you are responsible for determining the proper value of your dwelling" for coverage.  D. 74 ¶ 10; D. 78 ¶ 10; D. 74-10.  Amica represented to Gottlieb that future increases in the liability limit for his dwelling would be due either to property evaluations that it made or increases in inflation.  D. 70 ¶ 14.  Gottlieb did not make any material improvements, alterations or additions to his insured residence and Amica did not re-inspect the property after March 2015.  Id. ¶ 16.  Amica's cover letter to the 2016-17 Policy explained that "[m]any factors went into estimating your [coverage] limit," including "reconstruction costs," which "have risen steadily since our last survey of your home."  D. 74-10.  The estimate, however, was not based on the actual increase in reconstruction costs in the prior policy year, which had decreased, but rather on a projection or estimate of future inflation for Gottlieb's zip code provided

by a company called e2Value. D. 70 ¶¶ 18-19, 23; D. 74 ¶ 32; D. 78 ¶ 32. E2Value's projection relied upon multiplier figures that considered data from the National Association of Home Builders, the Bureau of Labor Statistics and the Census Bureau. D. 74 ¶ 37; D. 78 ¶ 37. The projection was also based in part on e2Value's assumption that large events like hurricanes, which require material or workforce capacity, could force immediate and steep price increases. D. 70 ¶ 24. After calculating these future reconstruction costs to be $310,059 by applying e2Value's 3.1% renewal multiplier, Amica rounded the number up to $311,000, rather than down to $310,000. Id. ¶ 26; D. 74 ¶ 38; D. 78 ¶ 38. Amica, however, would never pay more than Gottlieb's actual reconstruction costs even in the event of a total loss. Id. ¶ 27. Gottlieb canceled the 2016-17 Policy after paying premiums for nine months and purchased a homeowner's policy from another insurer. D. 70 ¶ 12.

## IV.     Procedural History

Gottlieb initiated this action in Middlesex Superior Court, D. 1-1, which Amica removed to this Court. D. 1. Amica moved to dismiss Gottlieb's claims for failure to state a claim, D. 11, which the Court allowed as to Counts I (breach of contract), II (breach of the implied covenant of good faith and fair dealing) and V (Chapter 93A, to the extent it relied upon Counts I and II), and denied as to Counts III (unjust enrichment), IV (money had and received) and V (Chapter 93A, to the extent it relied upon Counts III and IV), D. 24. Gottlieb then amended his complaint to broaden the proposed class definition but did not add any claims. D. 47. The parties then cross-moved for summary judgment. D. 68; D. 72. The Court heard the parties on the pending motions and took the matter under advisement. D. 81.

V.   Discussion

    A.   **Unjust Enrichment (Count III) and Money Had and Received (Count IV)**

"Unjust enrichment is an equitable claim with the same elements [as money had and received] save that it is not limited to enrichment by money, or its equivalent." Jelmoli Holding, Inc. v. Raymond James Financial Services, 470 F.3d 14, 16 n.2 (1st Cir. 2006). To establish either claim, Gottlieb must show that: "(1) a benefit was conferred upon Amica; (2) Amica had an appreciation or knowledge of the benefit; and (3) that acceptance or retention by Amica of this benefit would be inequitable without payment for its value." See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (internal citation omitted).

These equitable claims fail as a matter of law for at least two reasons.[2] First, Gottlieb, cannot "override an express contract by arguing unjust enrichment." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006); Reed v. Zipcar, Inc., 527 F. App'x 20, 24 (1st Cir. 2013) (explaining that neither unjust enrichment nor money had and received "can trump the plain terms of [a] contract willingly entered by both parties"). It is undisputed that Gottlieb accepted the terms of the 2016-17 Policy, which provided that Gottlieb was ultimately responsible for determining the proper value of his dwelling. D. 70 ¶¶ 6-7; D. 74 ¶¶ 10, 17; D. 78 ¶¶ 10, 17; see D. 74-10. Gottlieb's reliance upon Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd., 140 F. Supp. 3d 138, 140-41 (D. Mass. 2015) to distinguish this case from the general rule that an express contract bars equitable claims for unjust enrichment falls short. See D. 77 at 14-15. Whitman noted the "accepted practice" of allowing an unjust enrichment claim to proceed beyond the pleading stage as an alternative to a contract claim, despite the existence of a valid contract between the parties. See id. (quoting Lass v. Bank of Am., N.A., 695 F.3d 129, 140-41

---

[2] Amica did not assert these arguments in support of its motion to dismiss. See D. 12.

5

(1st Cir. 2012)).  Here, the parties have moved for summary judgment.  See SiOnyx, LLC v. Hamamatsu Photonics K.K., 332 F. Supp. 3d 446, 473 (D. Mass. 2018) (allowing summary judgment on unjust enrichment claim due to undisputed existence of valid contract despite claim surviving motion to dismiss when pleaded as alternative to contract claims).  Moreover, Whitman allowed the unjust enrichment claim to survive a motion to dismiss in part because the contract there did "not address the subject matter of the counterclaims." Whitman & Co., Inc., 140 F. Supp. 3d at 140.  Here, Amica's policy addressed the parties' role with respect to increases:  Amica provided the Liability Limit, based on its estimate, and Gottlieb determined the appropriate amount of coverage.  See D. 74 ¶ 10; D. 78 ¶ 10.  Second, "the existence of [Gottlieb's] statutory claim for unfair and deceptive acts and practices precludes [him] from bringing equitable claims for unjust enrichment and money had and received," regardless of the viability of that claim, as these equitable "remedies [are] available only when a party lacks an adequate remedy at law." Reed v. Zipcar, Inc., 883 F. Supp. 2d 329, 334 (D. Mass. 2012) (citation omitted), aff'd, 527 F. App'x 20 (1st Cir. 2013); see Fernandes v. Havkin, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (citations omitted); D. 24 at 8 (allowing Chapter 93A claim, in part, to survive the motion to dismiss).

As to the benefit conferred upon Amica, Gottlieb focuses on the $16 portion of the $65 total premium increase, which the parties agree stems from the increased coverage for Gottlieb's dwelling.  See D. 69 at 15; D. 74 ¶¶ 20-21; D. 78 ¶¶ 20-21.  Gottlieb, however, has not shown that the $16 portion of the premium increase is inequitable.  See Fernandes, 731 F. Supp. 2d at 114 (noting that plaintiff must show that "defendant's retention of that benefit is unjust and that equity requires that this court shift the benefit back to plaintiff").  Gottlieb paid Amica the $16 portion of the premium increase in exchange for an increase in coverage for Gottlieb's dwelling.  See D. 74 ¶¶ 17; D. 78 ¶¶ 17.  In other words, in exchange for a higher premium, Gottlieb received the benefit

of increased coverage in the event of a total loss of his home. Gottlieb counters that Amica sold him insurance he could never use "because Amica would never pay more than his actual reconstruction costs even in the event of a total loss." D. 69 at 12. There is no basis in the undisputed record, however, that Gottlieb would not be able to recover that amount, rendering the premium portion inequitable. Gottlieb takes issue with e2Value's methodology, see D. 69 at 8-12, but has not presented any evidence that its estimate was false. He points to another insurance company's appraisal of only the exterior of his dwelling (at $222,000), see D. 70 ¶ 27 (citing D. 71-21), but the record is devoid of any alternative figures for the actual or projected replacement costs of Gottlieb's dwelling in the event of a total loss. See D. 70; D. 74; Nelson v. Am. Fam. Mut. Ins. Co., 899 F.3d 475, 482 (8th Cir. 2018) (noting that state consumer protection claim failed where plaintiffs failed to present evidence that replacement estimate was false).

Accordingly, the Court allows Amica's motion as to Counts III and IV.

### B.  Chapter 93A Claim (Count V)

Chapter 93A makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Eye & Ear Infirmary, 412 F.3d at 243 (quoting Mass. Gen. L. c. 93A, § 2). "In determining whether a practice violates Chapter 93A, [courts] look to '(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Id. (internal quotation omitted). As to Gottlieb's Chapter 93A claim, the Court allowed it to proceed beyond the pleading stage only to the extent that it relied upon the conduct underlying Counts III and IV (i.e., unjust enrichment and money had and received), see D. 24 at 9, but these claims fail for the reasons stated above. Similarly, the undisputed record contains no evidence that Gottlieb suffered any injury caused by the premium

7

increase, as Gottlieb received the benefit of additional coverage from paying the increased premium. See D. 74 ¶¶ 17; D. 78 ¶¶ 17; Hershenow v. Enter. Rent-A-Car Co. Of Bos., Inc., 445 Mass. 790, 797 (2006) (explaining that plaintiff must show defendant's deceptive act caused loss or injury).

Accordingly, the Court allows Amica's motion as to Count V.[3]

### VI.  Conclusion

For the foregoing reasons, the Court DENIES Gottlieb's motion for summary judgment, D. 68, and ALLOWS Amica's motion for summary judgment, D. 72.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3] To the extent Gottlieb now presses a theory of *per se* Chapter 93A liability based upon violation of Mass. Gen. L. c. 176D, § 3(1)(a), see D. 69 at 16-19 (asserting Amica misrepresented terms of its policy in violation of statute), such theory fails for two reasons.  First, statutory misrepresentation falls outside of the conduct alleged in the complaint.  Second, a violation of § 3(1)(a) does not give rise to a private right of action.  See Foisy v. Royal Maccabees Life Ins. Co., 241 F. Supp. 2d 65, 68 (D. Mass. 2002) (citing Thorpe v. Mut. of Omaha Ins. Co., 984 F.2d 541, 544 n. 1 (1st Cir. 1993)).